**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

|  |  |
|---|---|
| **ATLAS COPCO AB, a Swedish corporation,** **ATLAS COPCO NORTH AMERICA LLC, a Delaware limited liability company,** <br>     **Plaintiffs,** <br> **vs.** <br><br> **ATLASCOPCOIRAN.COM,** **ATLASCASPIAN.COM,** **ATLASCASPIAN.NET,** **ATLASCASPIAN.ORG,** **ATLASCASPIAN.BIZ,** **ATLASCASPIANIR.COM,** **ATLASCASPIANIRAN.COM,** **ATLASCASPIAN.US,** **ATLASCASPIAN.CC,** **ATLASCASPIAN.TV,** **ATLAS-CASPIAN.COM,** **all Internet domain names,** <br>     **Defendants.** | Civil Action No. 1:07cv1208 (GBL/TCB) |

<u>**MEMORANDUM IN SUPPORT OF**</u>
<u>**PLAINTIFFS' MOTION FOR  A PRELIMINARY INJUNCTION**</u>

Plaintiffs Atlas Copco AB and Atlas Copco North America LLC (collectively

"Plaintiffs") respectfully submit this memorandum in support of their motion for the entry of a

preliminary injunction providing for the transfer of the Internet domain names

ATLASCOPCOIRAN.COM, ATLASCASPIAN.COM, ATLASCASPIAN.NET,

ATLASCASPIAN.ORG, ATLASCASPIAN.BIZ, ATLASCASPIANIR.COM,

ATLASCASPIANIRAN.COM, ATLASCASPIAN.US , ATLASCASPIAN.CC,

ATLASCASPIAN.TV and ATLAS-CASPIAN.COM  (the "Defendant Domain Names") to Atlas

Copco AB during the pendency of this action.

## <u>INTRODUCTION</u>

Atlas Copco AB and its subsidiaries around the world are collectively known, including

in the industry and to the public, as "Atlas Copco" and the "Atlas Copco Group" (hereafter

"Atlas Copco" or the "Atlas Copco Group").  Atlas Copco is a worldwide leader in providing

industrial productivity solutions.  Plaintiffs have used the ATLAS COPCO trademark

continually since 1956, and Atlas Copco AB has obtained trademark registrations in the United

States and many other countries throughout the world for the ATLAS COPCO trademark.  Atlas

Copco sells products and services, within the main business areas of compressors and generators,

mining and construction equipment, and industrial tools and assembly systems, under the

ATLAS COPCO trademark in approximately 150 markets throughout the world.

Atlas Copco is the target of an Internet-based scam.  An unknown group or individual

(the "Registrant") has misappropriated the ATLAS COPCO trademark and confusingly similar

variations thereof in at least 20 Internet domain names, including the Defendant Domain Names.

Without any kind of authorization, the Registrant has copied official Atlas Copco websites

(including website meta-tag coding containing the ATLAS COPCO trademark, many other Atlas

Copco trademarks, and names of Atlas Copco AB executives) and has created copy-cat websites

mimicking such official Atlas Copco websites.  As shown in Exhibits C and F to the Verified

Complaint, the copy-cat websites are distinguishable from official Atlas Copco websites only by

careful inspection.  The Registrant has linked these copy-cat websites to the Defendant Domain

Names.[1]  On these copy-cat websites, the ATLAS COPCO trademark, and/or confusingly similar variations thereof, is being used to deceive and confuse Internet users seeking information about Atlas Copco and Atlas Copco products and services.

The focus of the scam appears to be collecting confidential and sensitive information from customers of Atlas Copco and/or deceiving customers of Atlas Copco into purchasing products from the Registrant (and/or from other perpetrators participating in the scam) rather than Atlas Copco.  The Defendant Domain Names link to a "phishing" website, that displays a copy-cat version of Atlas Copco's online product ordering system, Atlas Copco Connect.  A customer who is deceived by the scam may inadvertently disclose confidential information to the perpetrators and/or purchase products from them in place of genuine Atlas Copco products.

The use of the ATLAS COPCO trademark in the Defendant Domain Names as alleged in Plaintiffs' Verified Complaint constitutes a clear violation of Plaintiffs' trademark rights, is damaging the goodwill represented by the ATLAS COPCO trademark, causing irreparable harm to Plaintiffs, and is causing confusion in the market, including as to the source and origin of the Defendant Domain Names and of the copy-cat sites displayed by the Defendant Domain Names.

## ALLEGATIONS SET FORTH IN THE VERIFIED COMPLAINT

The following facts are established in the Verified Complaint filed in this action.  For ease of reference, the paragraph numbering of the Verified Complaint is retained in the paragraphs below.

---

[1] To the extent the Defendant Domain Names, ATLASCASPIANIRAN.COM, ATLASCASPIANIR.COM, and ATLASCASPIAN.US  do not currently display a website, it is likely or highly probable that the Registrant intends to make those three Defendant Domain Names display "copy cat" sites are other infringing or damaging content.

1.      Plaintiffs Atlas Copco AB, a Swedish corporation, and Atlas Copco North America LLC, a Delaware limited liability company (collectively "Plaintiffs"), allege the following in support of their *in rem* claim against the Internet Domain Names ATLASCOPCOIRAN.COM, ATLASCASPIAN.COM, ATLASCASPIAN.NET, ATLASCASPIAN.ORG, ATLASCASPIAN.BIZ, ATLASCASPIANIR.COM, ATLASCASPIANIRAN.COM, ATLASCASPIAN.US , ATLASCASPIAN.CC, ATLASCASPIAN.TV, and ATLAS-CASPIAN.COM.   (the "Defendant Domain Names"):

## NATURE OF THE ACTION

2.      Plaintiffs file this *in rem* action asserting a claim for cyberpiracy under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125 *et seq*.

3.      The Defendant Domain Names are confusingly similar to the trademark ATLAS COPCO and are being used with a bad faith intent to profit from Plaintiffs' substantial investment in the ATLAS COPCO trademark.

4.      In bringing this lawsuit, Plaintiffs seek a preliminary and permanent injunction providing for the transfer of the Defendant Domain Names to Plaintiff Atlas Copco AB.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has *in rem* jurisdiction over the Defendant Domain Names pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(I) in that Plaintiffs cannot obtain *in personam* jurisdiction over the registrants of the Defendant Domain Names because the registrants are located outside of the

United States and are not subject to personal jurisdiction in the United States.[2] *In rem* jurisdiction is proper in this district pursuant to 15 U.S.C. § 1125(d)(2)(C)(i) because the domain name registries of the Defendant Domain Names are located in this district.  VeriSign Global Registry Services is the registry of the ".com," ".net," ".tv," and ".cc" extensions, and is located at 21345 Ridgetop Circle, Dulles, Virginia 20166.  Public Interest Registry is the registry of the ".net" extension, and is located at 1775 Wiehle Avenue, Suite 102A, Reston, Virginia 20190.  NeuStar, Inc. is the registry for the ".biz" and ".us" extensions, and is located at Loudoun Tech Center, 46000 Center Oak Plaza, Sterling, Virginia.  Further, under 15 U.S.C. § 1125(d)(2)(C)(ii), upon commencement of this case, documents sufficient to establish control and authority regarding the disposition of the registrations of the Defendant Domain Names will be expeditiously deposited with the Court.

7.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and 15 U.S.C. §§ 1125(d)(2)(A) and (C) because the registries of the Defendant Domain Names are located in this district.  Copies of the WHOIS records for the Defendant Domain Names are attached to the Verified Complaint as Exhibit A.

---

[2] The domain name ATLAS-CASPIAN.COM is purportedly registered to an entity located in the United States; however, the WHOIS information is false and fictitious.  The telephone number for ATLAS-CASPIAN.COM is the telephone number of the registrar of several Defendant Domain Names, Online NIC.  The mailing address is clearly incomplete.  Further, the common ownership of the Defendant Domain Names, including ATLAS-CASPIAN.COM is evidenced by the following facts: (1) ATLAS-CASPIAN.COM and the other Defendant Domain Names resolve to the same copy-cat website; (2) the fictitious entity "Atlas Caspian" is the registrant of ATLAS-CASPIAN.COM and several other Defendant Domain Names; and (3) the email address, registrar, and name servers for ATLAS-CASPIAN.COM are also used in conjunction with other Defendant Domain Names (see Verified Complaint, Exhibit E).  All of the other Defendant Domain Names are purportedly registered to registrants located outside of the United States.

## THE PARTIES

8.     Plaintiff Atlas Copco AB is a corporation duly organized and operating under the laws of Sweden, with its principal place of business located at Sickla Industriväg 3, Nacka, SE-105 23, Stockholm, Sweden.

9.     Plaintiff Atlas Copco North America LLC is a Delaware limited liability company, with its principal place of business at 34 Maple Avenue, Pine Brook, New Jersey 07058, whose ultimate parent company is Atlas Copco AB.

10.     The Defendant Domain Names are listed in the WHOIS records as being registered to various individuals and entities located in Iran, India, and Afghanistan.  Upon information and belief, and as more fully set forth in paragraph 25, Plaintiffs allege that the various registrants are mere alter egos of one or more individuals located in Iran, India, Afghanistan, or elsewhere.

## FACTUAL BACKGROUND

*Plaintiffs' Trademark Rights*

11.     Atlas Copco AB and its subsidiaries around the world are collectively known, including by the industry and the public, as the "Atlas Copco Group" and "Atlas Copco" (hereafter "Atlas Copco" or the "Atlas Copco Group").  Atlas Copco is a worldwide leader in providing industrial productivity solutions within three main business areas: compressors and generators, mining and construction equipment, and assembly systems and industrial tools. Within these three business areas, Atlas Copco markets and sells high quality products and services under the trademark ATLAS COPCO in approximately 150 markets throughout the world.

12.     Atlas Copco AB's trademark use began in 1873, when it began operations using the name "Atlas."  The name "Atlas," in various forms, including through Atlas Copco AB's prior names consisting of or incorporating the word "Atlas," has been used by Atlas Copco AB to identify Atlas Copco's goods and services for more than 130 years.

13.     Atlas Copco customers frequently shorten the ATLAS COPCO trademark, and refer to Atlas Copco and Atlas Copco products simply as "Atlas."

14.     Atlas Copco began using the trademark ATLAS COPCO in 1956, and since that time has used the ATLAS COPCO trademark to identify its goods and services throughout the world.  The ATLAS COPCO trademark is inherently distinctive, and has acquired distinctiveness as a result of Plaintiffs' effort and investment over the past half century.

15.     Plaintiffs have used the ATLAS COPCO trademark in the stylized format shown below (the "ATLAS COPCO LOGO") since at least 1962.



16.     Atlas Copco AB owns trademark registrations for the ATLAS COPCO trademark and the ATLAS COPCO LOGO in the United States and in many other countries throughout the world.   Atlas Copco AB acquired a registration for the ATLAS COPCO trademark and the ATLAS COPCO LOGO in the United States in 1989 as trademark registration number 1,526,505.  Trademark registration number 1,526,505 is valid, unrevoked, subsisting, and incontestable, and constitutes *prima facie* evidence of Atlas Copco AB's exclusive ownership of

the ATLAS COPCO trademark and the ATLAS COPCO LOGO.   A copy of the registration for

trademark registration number 1,526,505 is attached to the Verified Complaint as Exhibit B.

17.     Plaintiff Atlas Copco North America LLC is a licensee of Atlas Copco AB to use

the ATLAS COPCO trademark and the ATLAS COPCO LOGO in the United States.   In

addition, Atlas Copco North America LLC monitors infringement of and takes necessary action

to enforce the ATLAS COPCO trademark in the United States.

18.     Plaintiffs have expended significant monies and effort in advertising, promoting,

enforcing, and developing the ATLAS COPCO trademark and the ATLAS COPCO LOGO

throughout the world.  As a result of such advertising and expenditures, Plaintiffs have

established considerable goodwill in the ATLAS COPCO trademark.  The mark has become

widely known and recognized throughout the world as a symbol of high quality goods and

services.  The ATLAS COPCO trademark is associated by the industry and the public

exclusively with Atlas Copco.  The ATLAS COPCO trademark and the ATLAS COPCO LOGO

and associated goodwill are invaluable assets of substantial worth to Plaintiffs.

19.     Atlas Copco maintains informational websites through which various companies

of the Atlas Copco Group display marketing information related to products and services offered

by subsidiaries of Atlas Copco AB under the ATLAS COPCO trademark.  Atlas Copco AB's

official Internet website is available at ATLASCOPCO.COM.  In addition, the Atlas Copco

Group maintains other informational Internet sites (through which various subsidiaries of Atlas

Copco AB display marketing information related to products and services offered by subsidiaries

of Atlas Copco AB) specific to individual markets.  In maintaining such sites, Atlas Copco pairs

the ATLAS COPCO trademark (and the domain names that Atlas Copco AB registers) with

geographic designations corresponding to a particular market.  For example, the Atlas Copco

website for the United States is ATLASCOPCO.US, the Atlas Copco website for Canada is

ATLASCOPCO.CA, and the Atlas Copco website for the Netherlands is ATLASCOPCO.NL.

*The Defendant Domain Names are Confusingly Similar to Plaintiffs' Own
Domain Names and the ATLAS COPCO Trademark*

20.     The Defendant Domain Names are confusingly similar to the ATLAS COPCO

trademark.  Each Defendant Domain Name combines either ATLAS COPCO or ATLAS with a

geographic designator, similar to the pattern employed by Atlas Copco.[3]  Moreover, further

evidencing the confusing similarity, each of the Defendant Domain Names is being used to

display a copy-cat website that is nearly identical to an official Atlas Copco website, as detailed

in Paragraphs 21 and 22 below.

21.     The Defendant Domain Name ATLASCOPCOIRAN.COM consists of ATLAS

COPCO in its entirety coupled with the geographic term "Iran."  The addition of such a

geographic designation does nothing to dispel the confusing similarity between the domain name

and the ATLAS COPCO trademark and domain names.  In the context of domain names, one

court specifically noted, "[w]e do not believe the Defendant's addition of a generic or geographic

term . . . is sufficient to distinguish the domain name from Plaintiff's protected mark.  An internet

user might reasonably assume that [the geographic term] was added to the Plaintiffs' mark by the

Plaintiff to identify its geographic location."  Prime Publishers, Inc. v. Am.-Republican, Inc., 160

F. Supp.2d 266, 280 (D. Conn. 2001).  In light of the foregoing and of Atlas Copco's practice of

pairing the ATLAS COPCO trademark with geographic designations, the potential for confusion

---

[3] The pattern used by the Defendant Domain Names registrants, and their intent to duplicate
Atlas Copco's geographic designation pattern (discussed in Paragraph 19 above) is further
evidenced by the additional infringing domain names listed below in Paragraph 25, including but
not limited to ATLASCOPCO.US.COM, ATLASCASPIAN.CA, and ATLASCASPIAN.NL.

is more than likely—it is certain.  This confusion is further ensured by the fact that the Defendant Domain Name ATLASCOPCOIRAN.COM, as other Defendant Domain Names, displays a copy-cat site that looks almost identical to an official Atlas Copco site.

22.     The Defendant Domain Names that contain the term "Atlas Caspian" are confusingly similar to the name "Atlas Copco" and the ATLAS COPCO trademark and domain names.  This confusing similarity is intentionally enhanced by using the Defendant Domain Names to display copy-cat versions of official Atlas Copco websites.[4]  None of the copy-cat sites is in any way authorized by Atlas Copco.  The copy-cat sites displayed by the Defendant Domain Names are virtually identical to official Atlas Copco sites; virtually all graphics and text on the copy-cat sites have been copied from an official Atlas Copco website, except that the name "Atlas Copco" in the text has in most instances been changed to "Atlas Caspian", and except that the ATLAS COPCO LOGO has been changed to an infringing "Atlas Caspian" logo (as discussed below).  "Copyright notices" at the bottom of the copy-cat pages include the "company" name "Atlas Caspian AB", which in fact does not exist.[5]  The copy-cat sites have links (including links that say "Compressors and Generators") to other copy-cat sites, including the scam site ATLASCOPCO.US.COM which is part of a "phishing" scam as discussed in

---

[4]  To the extent that three of the Defendant Domain Names, ATLASCASPIANIR.COM, ATLASCASPIANIRAN.COM, and ATLASCASPIAN.US, do not currently display any websites, Plaintiffs have alleged, upon information and belief, that the registrants intend or are likely to make these Defendant Domain Names display copy-cat versions of Atlas Copco's official website and/or display other content infringing upon or damaging the goodwill of the ATLAS COPCO trademark.

[5]  The corporate designation "AB" is a Swedish abbreviation for "aktiebolag" which means "corporation".  There is no Swedish company named Atlas Caspian AB, and upon information and belief, there is no company anywhere named "Atlas Caspian".  It appears that the term "Atlas Caspian" appeared for the first time when the Defendant Domain Names were registered and started displaying the copy-cat websites.

Paragraphs 27-29 below).  The copy-cat websites use an infringing logo that says "Atlas

Caspian" and which intentionally is a confusingly similar variation of the ATLAS COPCO

trademark and ATLAS COPCO LOGO (with respect to the copy-cat/phishing site

ATLASCOPCO.US.COM, the site uses an exact replica of the ATLAS COPCO trademark and

ATLAS COPCO LOGO).  Exhibit C to the Verified Complaint includes comparisons of some

copy-cat webpages displayed at the Defendant Domain Names and the corresponding pages

displayed at Atlas Copco's official website.  Said infringing "Atlas Caspian" logo is depicted

below.

Infringing "Atlas Caspian" Logo          ATLAS COPCO LOGO



*The Defendant Domain Names Were Registered and*
*Are Being Used in Bad Faith.*

23.      Numerous facts demonstrate that the Defendant Domain Names have been

registered and used in bad faith in violation of the ACPA.  The Defendant Domain Names divert

consumers from online locations of Atlas Copco.  The copy-cat websites displayed by the

Defendant Domain Names incorporate meta-tags consisting of the ATLAS COPCO trademark,

many other Atlas Copco trademarks, the names of Atlas Copco products, and the names of Atlas

Copco AB executives.[6]  These meta-tags have been copied from official websites of Atlas

---

[6] Indeed, it appears that the only additional meta-tag incorporated in the copy-cat websites
displayed by Defendant Domain Names is the name "ranjkar mohammad Reza ranjkar," the
purported name of the registrant of several Defendant Domain Names.

Copco.  Copies of the metatags incorporated in the copy-cat websites are attached to the Verified

Complaint as Exhibit D, and are compared to the meta-tags used by official websites of Atlas

Copco.  The use of the ATLAS COPCO trademark and other trademarks owned by Atlas Copco

in meta-tags evidences bad faith pursuant to 15 U.S.C. § 1125(d)(1)(B)(i)(V).

24.     The Registrant's provision of misleading and false contact registration

information when applying for the registration of the Defendant Domain Names and intentional

failure to maintain accurate contact information evinces bad faith pursuant to 15 U.S.C. §

1125(d)(1)(B)(i)(VII).  Indeed, the registration information for each of the Defendant Domain

Names is false, inaccurate, and incomplete.  For example, the telephone numbers that the

Registrant provided when registering ATLASCOPCOIRAN.COM and ATLASCASPIAN.COM,

98.465465 and 98.65465465, respectively, are merely repeating patterns of the number

sequences 465 and 654, and are invalid.  The telephone number for ATLAS-CASPIAN.COM is

the telephone number of the registrar of several Defendant Domain Names, Online NIC.  Also,

the same street, building number, city, and postal code are used for both ATLASCASPIAN.ORG

and ATLASCASPIAN.BIZ even though the address for ATLASCASPIAN.ORG is purportedly

in Iran and the address for ATLASCASPIAN.BIZ is purportedly in Afghanistan.  These acts of

deception and other deficiencies make it impossible for Plaintiffs to determine the true identities

of the Registrant of the Defendant Domain Names.  Such conduct evidences bad faith pursuant

to 15 U.S.C. § 1125(d)(1)(B)(i)(VII).

25.     The individuals or entities responsible for registering the Defendant Domain

Names have also registered many other variations of the ATLAS COPCO trademark evincing

bad faith pursuant to 15 U.S.C. § 1125(d)(1)(B)(i)(VIII).  The additional domain names

registered by the Registrant that are identical or confusingly similar to the ATLAS COPCO

trademark include the following infringing domain names, which fraudulently display the same kind of copy-cat sites discussed in Paragraph 22 above.

| | | |
|---|---|---|
| atlascopco.us.com | atlascaspian.name | atlascaspian.in |
| atlascaspian.info | atlascaspian.bz | atlascaspian.ws |
| atlascaspian.ca | atlascaspian.nl | atlascaspian.eu |
| atlascaspian.cn | | |

These infringing domain names are not part of the Defendant Domain Names in this case because the registries for these domain names are located outside of this district.  For ease of comparison, the WHOIS information of the foregoing names and the Defendant Domain Names are shown in tabular form in Exhibit E to the Verified Complaint.  In comparing the information provided in the WHOIS database, the reoccurrence of various email addresses, physical addresses, names, registration dates, and DNS servers strongly suggest that the same person is responsible for registering the Defendant Domain Names and the foregoing names.

*The Defendant Domain Names Are Being Used*
*in a Phishing Scheme*

26.    The Defendant Domain Names are part of a "phishing" scam, involving a fraudulent version of Atlas Copco Connect, intended to acquire sensitive and confidential information from Atlas Copco and customers of Atlas Copco and/or deceiving customers of Atlas Copco into purchasing products from the owner of the Defendant Domain Names rather than Atlas Copco.  Such fraudulent use of the Defendant Domain Names clearly evinces the Registrant's intent to divert consumers from Atlas Copco's online location to a site accessible under the Defendant Domain Names that could harm the goodwill represented by the ATLAS COPCO trademark in violation of 15 U.S.C. § 1125(d)(1)(B)(i)(V).

27.    Specifically, the Defendant Domain Names are being used to operate a copy-cat version of Atlas Copco Connect, an online product ordering system that Atlas Copco customers

access by entering user-IDs and passwords for the purpose of placing and tracking orders for Atlas Copco products. The Defendant Domain Names direct visitors to a "phishing" website located at http://www.atlascopco.us.com/user/ (the specific phishing "log-in page" is arrived at by clicking on a link on the copy-cat sites, displayed by Defendant Domain Names, that says "Compressors and Generators" and then clicking on a link that says "Log into your Global Business Portal"). The "phishing" website is designed to look like an official Atlas Copco Connect website and replicates an earlier version of Atlas Copco Connect that recently was updated. The "phishing" website takes advantage of the fact that the scam domain name ATLASCOPCO.US.COM is nearly identical to an official Atlas Copco domain name and website at ATLASCOPCO.US in order to lure visitors into believing that they are in the process of logging into the official Atlas Copco Connect site. Thereby the phishing site fraudulently obtains the official Atlas Copco Connect log-in IDs and passwords of such visitors. The Atlas Copco Connect log-in IDs and passwords may then be used by the perpetrators of this scam to fraudulently log into the official Atlas Copco Connect, access sensitive or confidential information of Atlas Copco and/or Atlas Copco customers, and/or engage in other harmful conduct.

28.     The "phishing" website prominently displays the ATLAS COPCO trademark and the ATLAS COPCO LOGO. A comparison of the fraudulent version of Atlas Copco Connect available at ATLASCOPCO.US.COM (at http://www.atlascopco.us.com/user/) and Atlas Copco's official Atlas Copco Connect is attached to the Verified Complaint as Exhibit F. The use of the Defendant Domain Names in conjunction with a "phishing" scam evidences bad faith.

29.     Atlas Copco has not authorized the use of the ATLAS COPCO trademark or the ATLAS COPCO LOGO in connection with the Defendant Domain Names.

# ARGUMENT

Four factors are relevant to the determination of the availability of a preliminary injunction: "(1) the likelihood of irreparable harm to the [moving party] if the preliminary injunction is denied, (2) the likelihood of harm to the [non-moving party] if the requested relief is granted, (3) the likelihood that the [moving party] will succeed on the merits, and (4) the public interest." Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991); Blackwelder Furniture Co. v. Seilig Manufacturing Co., Inc., 550 F.2d 189, 195-96 (4th Cir. 1977); Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997) (it is "axiomatic" in the Fourth Circuit to apply the analysis based on Blackwelder).

The Fourth Circuit has adopted a "balance of hardships" approach to evaluating the availability of preliminary injunctive relief under these factors.  Under this approach, the Court should first "balance the 'likelihood' of irreparable harm" to the moving party from the failure to grant an injunction "against the 'likelihood' of harm" to the non-moving party resulting from issuance of an injunction.  Blackwelder, 550 F.2d at 196. "[I]f the balance tips decidedly in favor of the party requesting preliminary relief, 'a preliminary injunction will be granted if the [moving party] has raised questions going to the merits so serious, substantial, difficult, and doubtful, as to make them fair ground for litigation and thus more deliberate investigation.'" Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 551 (4th Cir. 1994). Plaintiffs easily qualify for preliminary injunctive relief because the balance of hardships tips decidedly in Plaintiffs' favor and there is an overwhelming likelihood that Plaintiffs will succeed on the merits of their cybersquatting claim.

Indeed, preliminary injunctive relief is routinely granted in trademark infringement cases such as this one on the basis of two important presumptions:  (a) that use of identical or

"counterfeit" trademarks produces a likelihood of confusion as to the source or sponsorship of the goods in question, see Shakespeare Co. v. Silstar Corp., 110 F.3d 234, 241 (4th Cir. 1997); Washington Speakers Bureau v. Leading Authorities, Inc., 33 F. Supp.2d 488, 501 (E.D. Va. 1999); and (b) that such confusion presumptively creates irreparable harm to the goodwill and reputation of the trademark owner, see Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 938-39 (4th Cir. 1995) ("[W]e recognize that irreparable injury regularly follows from trademark infringement."). In recent years, these standards have been applied to sustain preliminary injunctive relief in the field of Internet domain name disputes. See, e.g., Great Eastern Resort Corp. v. Virtual Resort Solutions, L.L.C., 189 F. Supp.2d 469 (W.D. Va. 2002) (entering preliminary injunction transferring the domain name MASSANUTTEN.COM); Planned Parenthood Fed. of America, Inc. v. Bucci, 42 U.S.P.Q.2d 1430 (S.D. N.Y. 1997) (entering preliminary injunction against registration of domain name PLANNEDPARENTHOOD.COM); Green Products Co. v. Independence Corn By-Products Co., 992 F. Supp. 1070, 1080 (N.D. Iowa 1997) (preliminarily enjoining defendant's registration of the domain name "GREENPRODUCTS.COM"); Minnesota Mining and Manufacturing Co. v. Taylor, 21 F. Supp.2d 1003, 1005 (D. Minn. 1998) (preliminarily enjoining defendant's registration of domain name "POSTIT.COM"); Hasbro, Inc. v. Internet Entertainment Group, Ltd., 40 U.S.P.Q.2d 1479 (W.D. Wash. 1996) (preliminarily enjoining defendant's registration of the domain name "CANDYLAND.COM"). These and other courts have recognized that only preliminary injunctive relief properly protects the substantial interests of the trademark holder from infringement and dilution by cyberpirates.

**I.      PLAINTIFFS' INJURY IS IRREPARABLE AND THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN PLAINTIFFS' FAVOR.**

Courts have long adopted a presumption that "irreparable injury regularly follows from trademark infringement." Lone Star Steakhouse, 43 F.3d at 939.  Trademark infringement gives rise to irreparable injury because the plaintiff has lost control of its business reputation.  Id.  As one court in the Fourth Circuit explained: "[w]ith regard to the first factor [for consideration in the preliminary relief context], the irreparable harm to a plaintiff trademark owner arising from the conduct of an infringer is enormous, immediate, and presumed in law." Augusta Nat'l, Inc. v. Executive Golf Mgt., Inc., 996 F. Supp. 492, 496 (D. S.C. 1998) (citing Lone Star Steakhouse, 43 F.3d at 938-39).

The presumption of irreparable injury is appropriate here.  Atlas Copco and customers of Atlas Copco are the target of a calculated plan intended to mislead visitors to the Defendant Domain Names into believing that the Defendant Domain Names are operated by Atlas Copco. There can be no other logical explanation for the fact that at least 20 domain names incorporating the ATLAS COPCO trademark and confusingly similar variations thereof have recently been paired with copy-cat versions of official Atlas Copco websites.  While the Defendant Domain Names remain in the control of the Registrant, an unknown number of Atlas Copco customers may be confused or deceived.  Moreover, until the Defendant Domain Names are transferred, the ATLAS COPCO trademark's and Plaintiffs' reputation remain in the hands of an unknown individual or group.  "[T]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods." Ideal Industries, Inc. v. Gardner Bender, Inc., 612 F.2d 1018, 1026 (7th Cir. 1979).  Indeed, this analysis has been applied in cases of cyberpiracy to sustain a presumption of irreparable harm where a defendant uses a plaintiff's trademark in an Internet domain name

address.  See, Green Products, 992 F. Supp. at 1080 (holding "that it would cause [plaintiff

Green Products Co.] irreparable harm if [defendant] were allowed to retain ownership of the

domain name 'greenproducts.com' during the pendency of the litigation"); Minnesota Mining,

21 F. Supp.2d at 1005 (finding that plaintiff 3M would suffer irreparable harm from defendant's

registration of domain name "POSTIT.COM" and noting that such harm should be inferred "as a

matter of law").  As an example of the harm to Plaintiffs' reputation currently being inflicted, the

Defendant Domain Names display fraudulent website content that purports to boycott the sale of

Atlas Copco products to the nation of Israel.  See, Exhibit C to the Verified Complaint.  The

Defendant Domain Names display website content that intentionally singles out the nation of

Israel and indicates (only with respect to Israel) that Atlas Copco products are "not available."

Atlas Copco does not boycott the sale of Atlas Copco products to Israel, and thus, a political

statement being made by the Registrant is being wrongfully attributed to Atlas Copco and harms

the goodwill represented by the ATLAS COPCO trademark.[7]  Moreover, the Registrant is

capable of displaying content at the Defendant Domain Names that could be even more

damaging to Plaintiffs' reputation and further disparaging to the goodwill represented by the

ATLAS COPCO trademark as long as the Defendant Domain Names remain within Registrant's

control.

On the other hand, there can be no claim of injury if the Defendant Domain Names are

transferred to Plaintiffs during the pendency of this action because the only effect will be to

prematurely end a fraudulent scheme attempting to deceive Internet users who seek information

about Atlas Copco or Atlas Copco products or services sold under the ATLAS COPCO

---

[7]   Indeed, boycotting of Israel may be illegal pursuant to 15 C.F.R. § 760 et seq.

trademark.  As there is no legitimate purpose served by the Defendant Domain Names, no

cognizable injury will result if Plaintiffs' motion is granted.  See Minnesota Mining, 21 F.

Supp.2d at 1005 (finding that a preliminary injunction against defendant's use of the

"POSTIT.COM" domain name would not cause "any harm" to the defendant).

## II.  PLAINTIFFS ARE HIGHLY LIKELY TO SUCCEED ON THE MERITS OF THEIR CYBERPIRACY CLAIM.

The ACPA provides: "A person shall be liable in a civil action by the owner of a

mark…if, without regard to the goods or services of the parties, that person— (i) has a bad faith

intent to profit from that mark…; and (ii) registers, traffics in, or uses a domain name that— (I)

in the case of a mark that is distinctive at the time of registration of the domain name, is identical

or confusingly similar to that mark...."  15 U.S.C. § 1125(d)(1)(A).  In a case where the owner of

a mark is unable to obtain *in personam* jurisdiction through reasonable diligence, the owner of

the mark may file an *in rem* civil action against a domain name.  15 U.S.C. § 1125(d)(2)(A).  An

*in rem* civil action is proper in the judicial district in which the domain name registry is located.

Id.  As more fully explained below, Plaintiffs are highly likely to succeed on the merits because

there is overwhelming evidence establishing each element of Plaintiffs' cyberpiracy claim.

### A.  The Defendant Domain Names are being used with "a bad faith intent to profit" from the ATLAS COPCO trademark.

The ACPA includes a non-exhaustive list of factors a court may consider in assessing bad

faith.  15 U.S.C. § 1125(d)(1)(B)(i).  The Fourth Circuit has explained with regard to the listed

factors:

> "[t]here is no simple formula for evaluating and weighing these factors.  For example, courts do not simply count up which party has more factors in its favor after the evidence is in. In fact, because use of these listed factors is permissive, we need not ... march through them all in every case. The factors are given to courts as a guide, not as a

substitute for careful thinking about whether the conduct at issue is motivated by a bad faith intent to profit."

Lamparello v. Falwell, 420 F.3d 309, 320 (4th Cir. 2005) (internal citations and quotations

omitted).

The factors particularly relevant to establishing "a bad faith intent to profit" in this case

include:

> (V)     the person's intent to divert consumers from the mark owner's online location to a
> site accessible under the domain name that could harm the goodwill represented by the
> mark, either for commercial gain or with the intent to tarnish or disparage the mark, by
> creating a likelihood of confusion as to the source, sponsorship, affiliation, or
> endorsement of the site;
> …
> (VII)   the person's provision of material and misleading false contact information when
> applying for the registration of the domain name, the person's intentional failure to
> maintain accurate contact information, or the person's prior conduct indicating a pattern
> of such conduct;
> …
> (VIII) the person's registration or acquisition of multiple domain names which the person
> knows are identical or confusingly similar to marks of others that are distinctive at the
> time of registration of such domain names….

15 U.S.C. § 1125(d)(1)(B)(i)(V), (VII) & (VIII).

A finding of "a bad faith intent to profit" is appropriate under any or all of these factors,

and is appropriate in this case based on the use of the Defendant Domain Names in connection

with a "phishing" scam and in connection with the infringing and disparaging conduct alleged in

the Verified Complaint and discussed herein.

First, with regard to factor (V) cited above, this court has noted that: "[a]s intent is rarely

discernible directly, it must typically be inferred from pertinent facts and circumstances."

International Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A

Monaco, 192 F. Supp.2d 467, 486 (E.D. Va. 2002).  In this case, the Registrant has acquired

more than 20 domain names that incorporate the ATLAS COPCO trademark, and confusingly

similar variations thereof.  These domain names have been paired with copy-cat websites based on official Atlas Copco websites.  Absent an intent "to divert consumers" from Atlas Copco's websites there is no logical explanation for such conduct.

Further, the copy-cat websites displayed by the Defendant Domain Names include meta-tag coding containing the ATLAS COPCO trademark, many other Atlas Copco trademarks, Atlas Copco product names and names of Atlas Copco AB executives.  The use of another's trademark as a meta-tag has been found to be "significant evidence of intent to confuse and mislead." Eli Lilly & Co. v. Natural Answers, Inc., 233 F.3d 456, 465 (7th Cir. 2000); accord Australian Gold v. Hatfield, 436 F.3d 1228, 1239 (10th Cir. 2006) (finding use of trademarks in metatags to support claims for trademark infringement); Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, (9th Cir. 1999) (analogizing use of a competitor's trademark in metatags to a misleading billboard).  This Court should infer from the "pertinent facts and circumstances" that the Registrant intends "to divert consumers from" official Atlas Copco websites.

Second, with regard to factor VII cited above, the contact information provided by the Registrant when applying for the registration of Defendant Domain Names is false and inaccurate.  For example, the telephone numbers for ATLASCOPCOIRAN.COM and ATLASCASPIAN.COM are merely repeating patterns of the same numbers, 98.465-465 and 98.654-654-65, respectively.  These telephone numbers are invalid.  Also, the same street, building number, city, and postal code are used for both ATLASCASPIAN.ORG and ATLASCASPIAN.BIZ; however, the address for ATLASCASPIAN.ORG is in Iran, while the address for ATLASCASPIAN.BIZ is in Afghanistan.  These acts of deception and other deficiencies in the contact information provided by the Registrant when registering the

Defendant Domain Names have made it impossible for Plaintiffs to determine the Registrant's true identity.  In comparing the information provided in the WHOIS database, the reoccurrence of various email addresses, physical addresses, names, registration dates, and DNS servers strongly suggest that the same person is responsible for registering more than 20 domain names incorporating the ATLAS COPCO trademark and confusingly similar variations thereof.  The common ownership of these domain names is also established by the fact that these domain names all resolve to the same copy-cat website.

Third, the Registrant has also registered many other variations of the ATLAS COPCO trademark, including the following domain names (none of which is authorized in any way).

| | | |
|---|---|---|
| atlascopco.us.com | atlascaspian.name | atlascaspian.in |
| atlascaspian.info | atlascaspian.bz | atlascaspian.ws |
| atlascaspian.ca | atlascaspian.nl | atlascaspian.eu |
| atlascaspian.cn | | |

The above-listed domain names are being used in conjunction with the Defendant Domain Names to divert consumers away from official Atlas Copco online locations.  Such conduct evidences bad faith pursuant to 15 U.S.C. § 1125(d)(1)(B)(i)(VIII).

Fourth, The Defendant Domain Names are part of a "phishing" scam, involving a fraudulent version of Atlas Copco Connect, intended to acquire sensitive and confidential information from Atlas Copco and customers of Atlas Copco and/or to deceive customers to purchase products or services from the Registrant (and/or other perpetrators of the scam) instead of genuine products from Atlas Copco.  Such fraudulent use of the Defendant Domain Names clearly evinces the Registrant's intent to divert consumers from Atlas Copco's online location to a site accessible under the Defendant Domain Names that could harm the goodwill represented by the ATLAS COPCO trademark in violation of 15 U.S.C. § 1125(d)(1)(B)(i)(V).

Specifically, the Defendant Domain Names are being used to operate a copy-cat version of Atlas Copco Connect, an online product ordering system that Atlas Copco customers access by entering user-IDs and passwords for the purpose of placing and tracking orders for Atlas Copco products.  The Defendant Domain Names direct visitors to a "phishing" website located at http://www.atlascopco.us.com/user/ (the specific phishing "log-in page" is arrived at by clicking on a link on the copy-cat sites, displayed by Defendant Domain Names, that says "Compressors and Generators" and then clicking on a link that says "Log into your Global Business Portal"). The phishing website is designed to look like an official Atlas Copco Connect website and mimicks an earlier version of Atlas Copco Connect that recently was updated.  The phishing website takes advantage of the fact that the scam domain name ATLASCOPCO.US.COM is nearly identical to an official Atlas Copco domain name and website at ATLASCOPCO.US in order to lure visitors into believing that they are in the process of logging into the official Atlas Copco Connect site.  Thereby the phishing site fraudulently obtains the official Atlas Copco Connect log-in IDs and passwords of such visitors.  The Atlas Copco Connect log-in IDs and passwords may then be used by the perpetrators of this scam to fraudulently log into the official Atlas Copco Connect, and thereby access sensitive or confidential information of Atlas Copco and/or Atlas Copco's customers, and/or engage in other harmful conduct.

As shown in Exhibit F to the Verified Complaint, the phishing website prominently displays the ATLAS COPCO trademark and the ATLAS COPCO LOGO.   The use of the Defendant Domain Names in conjunction with a phishing scam evidences bad faith.

**B.      Plaintiffs' trademark was distinctive and strong at the time the Defendant Domain Names were registered.**

The ATLAS COPCO trademark is a distinctive and strong mark as those terms have been defined by the Fourth Circuit:

> [C]ourts have categorized marks submitted for registration into four classes in increasing order of strength or distinctiveness:  (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary. . . . Courts have reasoned that a word or figure is descriptive if it "identifies a characteristic or quality of an article or service," and is suggestive if it "'suggests rather than describes,' some characteristic of the goods to which it is applied and requires the consumer to exercise his imagination to reach a conclusion as to the nature of these goods."

Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984).  Further, a federal trademark registration is *prima facie* evidence of "the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration…."  15 U.S.C. § 1115(a).

In this case, Plaintiffs' trademark rights are clearly established both by an incontestable trademark registration, and by many decades of use in commerce.  The ATLAS COPCO trademark is neither "descriptive" nor "suggestive" of the characteristics of the compressors and generators, mining and construction equipment, and assembly systems and industrial tools manufactured and sold by Atlas Copco.  Instead, it is an "arbitrary" mark that has been associated exclusively with Atlas Copco.  The strength of the ATLAS COPCO trademark has been developed and fortified over several decades through substantial investments in advertising and promotion in the U.S. and throughout the world.  The ATLAS COPCO trademark is entitled to maximum protection afforded by trademark law.  Lone Star Steakhouse, 43 F.3d at 933.

Atlas Copco AB's registration of the ATLAS COPCO trademark should insulate it from having to contend with any confusing registrations of Internet domain names utilizing that mark. See, Cardservice, Int'l, Inc. v. McGee, 950 F. Supp. 737, 741 (E.D. Va. 1997) ("The fact that Cardservice International has been awarded a trademark means that it should not be forced to compete with others who would also use the words 'cardservice' in connection with Internet domain names.")

The Defendant Domain Names were all registered within the past 18 months.  As such, Plaintiffs' use of the ATLAS COPCO trademark predates the registration of the Defendant Domain Names by nearly 50 years.

### C.   The Defendant Domain Names are confusingly similar to Plaintiffs' trademark and will succeed in their intended objective of causing confusion if not transferred to Plaintiffs.

It is well established that an intent to confuse gives rise to a presumption of confusion. As stated by the Fourth Circuit: "we presume that the person who sets out to infringe on another's trademark has more brains than scruples and will likely succeed." Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 38 U.S.P.Q.2d 1449, 1456 (4th Cir. 1996).  As noted above, an intent to deceive and divert Internet users seeking Atlas Copco and/or Atlas Copco products or services is the only logical explanation for the acquisition of the Defendant Domain Names and the pairing of those domain names with copy-cat websites mimicking official Atlas Copco websites.  In the face of a clear intent to cause confusion, this Court should presume that the scam "will likely succeed" in causing confusion.

Indeed, even without a presumption of confusion, there is ample evidence that the Defendant Domain Names are confusingly similar to the ATLAS COPCO trademark.  In the Fourth Circuit, the similarity of two marks is determined by examining the "dominant or salient

portions of the marks." Lone Star Steakhouse, 43 F.3d at 936. Where the "dominant" portion of

the marks is "sufficiently similar in appearance," a finding of a likelihood of confusion is

appropriate despite the fact that collateral portions of the mark may differ. Id. (affirming entry

of an injunction against use of the name "Lone Star Grill" as an infringement of the plaintiff's

mark "Lone Star Steakhouse & Saloon").

In this case, the dominant portion of each of the Defendant Domain Names is "ATLAS

COPCO" or "ATLAS." These "dominant" terms are paired with the generic terms "CASPIAN"

and "IRAN," which are generic geographic terms that do not distinguish the Defendant Domain

Names from the ATLAS COPCO trademark. Indeed, in the context of Internet domain names,

one court specifically noted "[w]e do not believe the Defendant's addition of a generic or

geographic term ... is sufficient to distinguish the domain name from Plaintiff's protected mark.

An internet user might reasonably assume that [the geographic term "CT"] was added to the

Plaintiff's mark by the Plaintiff to identify its geographic location." Prime Publishers, Inc. v.

Am.-Republican, Inc., 160 F. Supp.2d 266, 280 (D. Conn. 2001). This conclusion is especially

appropriate in this case because Atlas Copco has a practice of pairing the ATLAS COPCO

trademark with geographic designations corresponding to a particular market.

The dominant portions of the Defendant Domain Names are confusingly similar to the

ATLAS COPCO trademark. With regard to the Defendant Domain Names that wholly

incorporate the ATLAS COPCO trademark, this point is clear. With regard to the Defendant

Domain Names that incorporate "ATLAS," the leading treatise on trademark law explains:

> Americans are prone to abbreviate recognized trademarks and to use nicknames. Such
> abbreviations and nicknames are just as entitled to legal protection as the original full
> trademark. If the public has come to shorten a trademark into a nickname, then the
> nickname is entitled to independent legal protection as a mark. Examples of nicknames
> held protectable as trademarks include: COKE for Coca-Cola, BUD for BUDWEISER
> beer, BEETLE for a style of Volkswagen automobile, HOG for large Harley-Davidson

motorcycles, MET for METROPOLITAN OPERA, PAN-AM, for Pan American Airways, and PHILLIES for PHILADELPHIA cigars.

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 7:18 (4th ed. 2004).

Atlas Copco customers frequently shorten the ATLAS COPCO trademark, and refer to Plaintiffs as simply "Atlas."  Accordingly, "Atlas" is confusingly similar to the ATLAS COPCO trademark.  Indeed, this conclusion is strongly supported by the fact that the Defendant Domain Names consisting of terms "Atlas" and "Caspian" or "Iran" display are linked to copy-cat websites (including the scam site ATLASCOPCO.US.COM) that mimic official Atlas Copco websites and the copy-cat websites display an infringing "Atlas Caspian" logo that is confusingly similar to the ATLAS COPCO trademark (or display the actual ATLAS COPCO trademark).

Even if web surfers eventually discover that the Defendant Domain Names are not affiliated with Atlas Copco, the "initial confusion" associated with the misdirection of traffic to the Defendant Domain Names is confusion that is cognizable under the Lanham Act.  See Green Products, 992 F. Supp. at 1076.  A similar argument was advanced by defendant ICBP in the Green Products case.  ICBP had registered the domain name "GREENPRODUCTS.COM," and argued any initial confusion by a web surfer would eventually be cured.  The Green Products court's response is equally applicable here:

> The Court finds ICBP's argument clever, but ultimately unpersuasive.  ICBP's argument is analogous to saying that ICBP has the right to hang a sign in front of its store that reads, "Green Products." When customers enter the store expecting to be able to see (and possibly, to buy) products made by Green Products, ICBP then announces, "Actually, this store isn't owned by Green Products; it's owned by ICBP. . . ." In essence, ICBP is capitalizing on the strong similarity between Green Products' trademark and ICBP's domain name to lure customers onto its web page.

Id. at 1076.

**D.    An *in rem* proceeding is appropriate because Plaintiffs are unable to obtain in personam jurisdiction over the Registrant.**

Plaintiffs are unable to obtain *in personam* jurisdiction over the Registrant because the Registrant appears to be located in Iran, Afghanistan, or India and there is no evidence that the Registrant has sufficient contacts with the United States to trigger long-arm jurisdiction.  This Court has *in rem* jurisdiction over the Defendant Domain Names by virtue of the fact that the domain name registries are located in this district.  15 U.S.C. § 1125(d)(2)(A).

**III.    THE PUBLIC INTEREST IS STRONGLY FAVORED BY ENTERING A PRELIMINARY INJUNCTION.**

Finally, the public interest heavily favors entry of a preliminary injunction in this case. Presented with circumstances analogous to the present circumstances, courts have found that the public interest clearly tips in favor of the trademark owner.  Arkansas Best Corp. v. Carolina Freight Corp., 60 F. Supp.2d 513, 516 (W.D. N.C. 1999) ("Permitting continued infringement of a competitor's mark does not serve the public interest."); Estate of Presley v. Russen, 513 F. Supp. 1339 (D. N.J. 1981) ("[T]he public ... is interested in fair competitive practices and clearly opposed to being deceived in the marketplace."); Green Products, 992 F. Supp. at 1081 (holding that preliminary injunction against defendant's misappropriation of plaintiff's trademark in domain name advances public interest); Minnesota Mining and Manufacturing Co. v. Taylor, 21 F. Supp.2d 1003, 1005 (D. Minn. 1998) (finding that the Internet "has the potential to benefit hundreds of millions of people" and there is a "strong public interest in stopping ... misuses of this new technology").

## CONCLUSION

For the foregoing reasons, the Court should enter a preliminary injunction ordering the Registries for the Defendant Domain Names to change immediately the registrars for the

Defendant Domain Names to Network Solutions LLC so the Defendant Domain Names can be registered by Atlas Copco AB.  Further, Plaintiffs request that the Court exercise its discretion and waive the requirement of a bond under Rule 65 since there is virtually no likelihood that the entry of this preliminary injunction is improper or will cause harm to any party.

**ATLAS COPCO AB and**
**ATLAS COPCO NORTH AMERICA LLC**

By:      _/s/ Laura N. Begun_____
         Laura N. Begun
         laura.begun@troutmansanders.com
         Virginia Bar No. 72074
         TROUTMAN SANDERS LLP
         1660 International Drive, Suite 600
         McLean, Virginia  22102
         Telephone:      (703) 734-4334
         Facsimile:      (703) 734-4340

OF COUNSEL:

Gregory D. Phillips
Utah Bar Number 4645
Jared L. Cherry
Utah Bar Number 11534
HOWARD, PHILLIPS & ANDERSEN
560 East 200 South, Suite 300
Salt Lake City, UT 84102
Telephone:      (801) 366-7471
Facsimile:      (801) 366-7706

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of December 2007, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system and that a true and correct copy of the foregoing was sent to the following non-filing users by first class mail and electronic mail:

| **ATLASCOPCOIRAN.COM** | **ATLASCASPIAN.COM** |
|---|---|
| Reza Ranjkar<br>AtlasCaspian<br>AtlasCaspian<br>AtlasCaspian, AtlasCaspian 14735469<br>Iran<br><br>atlascaspian@gmail.com | ParsaGostar<br>AtlasCaspian<br>No. 4 , Delhi<br>Delhi, Delhi 1478526396<br>India<br><br>atlaswide@gmail.com |
| **ATLASCASPIAN.NET** | **ATLASCASPIAN.ORG** |
| Qazvin Net<br>AtlasCaspian<br>Atlascaspian Building<br>Delhi, Delhi 34185<br>India<br><br>atlaswide@gmail.com | Qazvin Net<br>CaspianITC<br>End Of Padegan St. Hamyari Bldg. No 10<br>Qazvin, Qa 34185<br>Iran<br><br>info@qazvin.net |
| **ATLASCASPIAN.BIZ** | **ATLASCASPIANIR.COM** |
| Alireza Khodabakhsh<br>CaspianITC<br>End of Padegan St. Hamyari Building. No 10<br>Qazvin, QA 34185<br>Afghanistan<br><br>ranjkar@gmail.com | Atlas Caspian<br>Teh, On 12344<br>Iran<br><br><br><br>lilouser@yahoo.com |
| **ATLASCASPIANIRAN.COM** | **ATLASCASPIAN.US** |
| Atlas Caspian<br>Teh, On 12344<br>Iran<br><br><br>lilouser@yahoo.com | Alireza Khodabakhsh<br>CaspianITC<br>End Of Padegan St. Hamyari Bld. No 10<br>Qazvin, QA 34185<br>Afghanistan<br><br>info@qazvin.net |

| **ATLASCASPIAN.CC** | **ATLASCASPIAN.TV** |
|---|---|
| Mohammad Reza Ranjkar<br>Ranjkar Co<br>Tehran<br>Tehran, Tehran 34185<br><br>ranjkar@gmail.com | Mohammad Reza Ranjkar<br>Ranjkar Co.<br>Tehran<br>Tehran, Tehran 34185<br><br>ranjkar@gmail.com |
| **ATLAS-CASPIAN.COM**<br><br>AtlasCaspian<br>AtlasCaspian<br>Uniguard Park McKinley Building Bellevue<br>Washington, WA 98007<br><br>AtlasCaspian@gmail.com | |

By:    /s/ Laura N. Begun
    Laura N. Begun
    laura.begun@troutmansanders.com
    Virginia Bar No. 72074
    TROUTMAN SANDERS LLP
    1660 International Drive, Suite 600
    McLean, Virginia  22102
    Telephone: (703) 734-4334
    Facsimile: (703) 734-4340