## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| **ATLAS COPCO AB, a Swedish corporation,** <br> **ATLAS COPCO NORTH AMERICA LLC, a Delaware limited liability company,** <br><br>     **Plaintiffs,** <br><br> **vs.** <br><br><br> **ATLASCOPCOIRAN.COM,** <br> **ATLASCASPIAN.COM,** <br> **ATLASCASPIAN.NET,** <br> **ATLASCASPIAN.ORG,** <br> **ATLASCASPIAN.BIZ,** <br> **ATLASCASPIANIR.COM,** <br> **ATLASCASPIANIRAN.COM,** <br> **ATLASCASPIAN.US,** <br> **ATLASCASPIAN.CC,** <br> **ATLASCASPIAN.TV,** <br> **ATLAS-CASPIAN.COM,** <br> **all Internet domain names,** <br><br>     **Defendants.** | Civil Action No. 1:07cv01208 (GBL/TCB) |

## MEMORANDUM IN SUPPORT OF
## <u>PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>

Plaintiffs Atlas Copco AB and Atlas Copco North America LLC (collectively

"Plaintiffs") respectfully submit this memorandum in support of their motion for summary

judgment in this *in rem* action brought pursuant to the Anticybersquatting Consumer Protection

Act ("ACPA"), 15 U.S.C. § 1125(d)(2), against the Internet domain names

ATLASCOPCOIRAN.COM, ATLASCASPIAN.COM, ATLASCASPIAN.NET,

ATLASCASPIAN.ORG, ATLASCASPIAN.BIZ, ATLASCASPIANIR.COM,

ATLASCASPIANIRAN.COM, ATLASCASPIAN.US, ATLASCASPIAN.CC,

ATLASCASPIAN.TV, and ATLAS-CASPIAN.COM (the "Defendant Domain Names").

## I.  <u>INTRODUCTION</u>

Atlas Copco AB and its subsidiaries around the world are collectively known, including

in the industry and to the public, as "Atlas Copco" and the "Atlas Copco Group" (hereafter

"Atlas Copco" or the "Atlas Copco Group").  Atlas Copco is a worldwide leader in providing

industrial productivity solutions.  Plaintiffs have used the ATLAS COPCO trademark

continually since 1956, and Atlas Copco AB has obtained trademark registrations in the United

States and many other countries throughout the world for the ATLAS COPCO trademark.  Atlas

Copco sells products and services, within the main business areas of compressors and generators,

mining and construction equipment, and industrial tools and assembly systems, under the

ATLAS COPCO trademark in approximately 150 markets throughout the world.

Atlas Copco is the target of an Internet-based scam.  An unknown group or individual

(the "Registrant") has misappropriated the ATLAS COPCO trademark and confusingly similar

variations thereof in at least 20 Internet domain names, including the Defendant Domain Names.

Without any kind of authorization, the Registrant has copied official Atlas Copco websites

(including website meta-tag coding containing the ATLAS COPCO trademark, many other Atlas

Copco trademarks, and names of Atlas Copco AB executives) and has created copy-cat websites

mimicking such official Atlas Copco websites.  As shown in Exhibits C and F to the Verified

Complaint, the copy-cat websites are distinguishable from official Atlas Copco websites only by

careful inspection.  The Registrant has linked these copy-cat websites to the Defendant Domain

Names.[1]  On these copy-cat websites, the ATLAS COPCO trademark, and/or confusingly similar variations thereof, is being used to deceive and confuse Internet users seeking information about Atlas Copco and Atlas Copco products and services.

The focus of the scam appears to be collecting confidential and sensitive information from customers of Atlas Copco and/or deceiving customers of Atlas Copco into purchasing products from the Registrant (and/or from other perpetrators participating in the scam) rather than Atlas Copco.  The Defendant Domain Names link to a "phishing" website, that displays a copy-cat version of Atlas Copco's online product ordering system, Atlas Copco Connect.  A customer who is deceived by the scam may inadvertently disclose confidential information to the perpetrators and/or purchase products from them in place of genuine Atlas Copco products.

The use of the ATLAS COPCO trademark in the Defendant Domain Names constitutes a clear violation of Plaintiffs' trademark rights, is damaging the goodwill represented by the ATLAS COPCO trademark, causing irreparable harm to Plaintiffs, and is causing confusion in the market, including as to the source and origin of the Defendant Domain Names and of the copy-cat sites displayed by the Defendant Domain Names.

## II.  PROCEDURAL BACKGROUND

Atlas Copco filed its Verified Complaint instituting this *in rem* action on December 3, 2007 and ensured that the registrant of the Defendant Domain Names (the "Registrant") received notice of the action in at least three different ways, *i.e.*, postal, electronic mail, and published notice.  On December 7, 2007 Atlas Copco served a true and correct copy of the Verified

---

[1] To the extent the Defendant Domain Names, ATLASCASPIANIRAN.COM, ATLASCASPIANIR.COM, and ATLASCASPIAN.US do not currently display a website, it is likely or highly probable that the Registrant intends to make those three Defendant Domain Names display "copy cat" sites or display other infringing or damaging content.

Complaint via first class mail, and electronic mail upon the Registrant at the addresses listed in the WHOIS database for each of the Defendant Domain Names.[2]  As required by the ACPA and this Court's Order, Atlas Copco published notice of this action in *The Washington Times* on December 19, 2007.[3]  (*See* Order to Publish Notice of Action, [Docket Entry 9]).  The Plaintiffs will file an Affidavit Describing Compliance with Order Regarding Publication of Notice once they received the Affidavit of Publication from *The Washington Times*.

On December 10, 2007, Plaintiffs filed and served a Motion for a Preliminary Injunction that originally was scheduled to be heard on December 21, 2007.  At the Court's request, that Motion was re-noticed for a hearing on January 11, 2008.  No Opposition has been filed to the Motion for a Preliminary Injunction and the eleven-day time period for responding to that Motion has expired.  The granting of this Motion for Summary Judgment will alleviate the need for the Court to consider the request for a Preliminary Injunction.

### III.  STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Plaintiffs filed a Verified Complaint on December 3, 2007, in which they set forth the factual basis in support of their claim under the ACPA in paragraphs 1-29 and Exhibits A-F. Those same material facts were included in the Memorandum in Support of the Motion for a Preliminary Injunction filed on December 10, 2007 (Docket Entry 7), and they have not been disputed by the Defendant Domain Names.  Under the circumstances, Plaintiffs adopt those verified allegations as their statement of material facts not in dispute for the purposes of this

---

[2]  Plaintiffs' counsel has received numerous emails and telephone calls from individuals purporting to be the Registrant of the Defendant Domain Names in response to the email service of the Verified Complaint.

[3]  The time period for Defendant Domain Names to file a response to the Verified Complaint expires on January 8, 2008.

Motion for Summary Judgment and Local Civil Rule 56(B).   A verified pleading may be treated

as an affidavit and used in any way in which an affidavit would be used, including in supporting

a motion for summary judgment.  *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)

(explaining that "a verified complaint is the equivalent of an opposing affidavit for summary

judgment purposes, when the allegations contained therein are based on personal knowledge");

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1339 (3d ed.

2007) (*citing Fletcher v. Norfolk Newspapers, Inc.*, 239 F.2d 169 (4th Cir. 1956)).

## IV.  ARGUMENT

### A.      Summary Judgment Standard

The moving party satisfies the summary judgment standard when the nonmoving party

"'fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial.'" *Cable News

Network, L.P. v. CNNews.com,* 177 F. Supp.2d 506, 515 n. 19 (E.D. Va. 2001) *aff'd in part*,

*vacated in part on other grounds*, 56 Fed. Appx. 599 (4th Cir. 2003) (quoting *Celotex Corp. v.

Catrett,* 477 U.S. 317, 322 (1986)).   However, a "mere scintilla" of evidence is not enough.

Rather, for the nonmoving party to avoid summary judgment, "the evidence, when viewed in the

light most favorable to that party, must be sufficient for a reasonable jury to find in its favor.'"

*Id.*  (quoting *MacDonald v. Angelone*, 69 F. Supp.2d 787, 791 n.7 (E.D. Va. 1999).

### B.      Atlas Copco is Entitled to Summary Judgment on Its ACPA *In Rem* Claim.

The *in rem* cybersquatting provision of the Lanham Act provides that:

The owner of a mark may file an *in rem* action against a domain name in the judicial
district in which the domain name registrar, domain name registry, or other domain name
authority that registered or assigned the domain name is located if—
    (i)       the domain name violates any right of the owner of a mark registered in
             the Patent and Trademark Office, or protected under subjection (a) or (c);
             and

> (ii) the court finds that the owner (I) is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or (II) through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1).

(15 U.S.C. § 1125(d)(2)(A)). Thus, to prevail on summary judgment in this ACPA *in rem* suit, Atlas Copco must establish that there is no genuine issue of material fact with respect to the following three requirements: (1) that the suit was brought in the jurisdiction where the registry for the infringing domain name is located; (2) that *in personam* jurisdiction over a person or entity who would have been a defendant in an *in personam* civil action does not exist, or that such person cannot be found through due diligence; and (3) that a violation of the ACPA is established as a matter of law. 15 U.S.C. § 1125(d)(1)(A); s*ee also* 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25:79 (2006) (*in rem* jurisdiction is available for a violation of 15 U.S.C. § 1125(d) anticybersquatting provisions if plaintiff's mark is registered).

### 1. Atlas Copco Has Brought Suit in the District Where the Registries for the Defendant Domain Names are Located.

Under 15 U.S.C. § 1125(d)(2)(A), the owner of a mark may file an *in rem* civil action against a domain name in the judicial district in which the domain name registry is located. This Court has jurisdiction because the registries of the Defendant Domain Names are located in this district. (Verified Complaint ¶ 6).

### 2. This Court Cannot Obtain *In Personam* Jurisdiction Over the Registrant of the Defendant Domain Names.

Plaintiffs are unable to obtain *in personam* jurisdiction over the Registrant because the Registrant appears to be located in Iran, Afghanistan, or India and there is no evidence that the Registrant has sufficient contacts with the United States to trigger long-arm

jurisdiction.  (Verified Complaint ¶¶ 10, 25).  Consequently, personal jurisdiction over the

Registrant does not exist, allowing this Court to exercise *in rem* jurisdiction.  *Continental*

*Airlines, Inc. v. CONTINENTALAIRLINES.COM,* 390 F. Supp.2d 501, 507 (E.D. Va. 2005).

> **3.**    <u>**There is Overwhelming and Uncontroverted Evidence Establishing**</u>
> <u>**Each Element of Plaintiffs' Cyberpiracy Claim.**</u>

The ACPA provides: "A person shall be liable in a civil action by the owner of a

mark…if, without regard to the goods or services of the parties, that person— (i) has a bad faith

intent to profit from that mark…; and (ii) registers, traffics in, or uses a domain name that— (I)

in the case of a mark that is distinctive at the time of registration of the domain name, is identical

or confusingly similar to that mark...."  15 U.S.C. § 1125(d)(1)(A).

> **i.**    **The Defendant Domain Names are being used with "a bad faith intent**
> **to profit" from the ATLAS COPCO trademark.**

The ACPA includes a non-exhaustive list of factors a court may consider in assessing bad

faith.  15 U.S.C. § 1125(d)(1)(B)(i).  The Fourth Circuit has explained with regard to the listed

factors:

> "[t]here is no simple formula for evaluating and weighing these factors.  For example,
> courts do not simply count up which party has more factors in its favor after the evidence
> is in. In fact, because use of these listed factors is permissive, we need not ... march
> through them all in every case. The factors are given to courts as a guide, not as a
> substitute for careful thinking about whether the conduct at issue is motivated by a bad
> faith intent to profit."

*Lamparello v. Falwell*, 420 F.3d 309, 320 (4th Cir. 2005) (internal citations and quotations

omitted).

The factors particularly relevant to establishing "a bad faith intent to profit" in this case

include:

> (V)    the person's intent to divert consumers from the mark owner's online location to a
> site accessible under the domain name that could harm the goodwill represented by the
> mark, either for commercial gain or with the intent to tarnish or disparage the mark, by

creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

…

(VII)    the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

…

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names….

15 U.S.C. § 1125(d)(1)(B)(i)(V), (VII) & (VIII).

A finding of "a bad faith intent to profit" is appropriate under any or all of these factors, and is appropriate in this case based on the use of the Defendant Domain Names in connection with a "phishing" scam.

First, with regard to factor (V) cited above, this Court has noted that: "[a]s intent is rarely discernible directly, it must typically be inferred from pertinent facts and circumstances." *International Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco*, 192 F. Supp.2d 467, 486 (E.D. Va. 2002). In this case, the Registrant has acquired more than 20 domain names that incorporate the ATLAS COPCO trademark, and confusingly similar variations thereof. (Verified Complaint ¶ 25). These domain names have been paired with copy-cat websites based on official Atlas Copco websites. (Verified Complaint ¶¶ 22, 25). Absent an intent "to divert consumers" from Atlas Copco's websites there is no logical explanation for such conduct.

Further, the copy-cat websites displayed by the Defendant Domain Names include meta-tag coding containing the ATLAS COPCO trademark, many other Atlas Copco trademarks, Atlas Copco product names and names of Atlas Copco AB executives. (Verified Complaint ¶ 23). The use of another's trademark as a meta-tag has been found to be "significant evidence of

intent to confuse and mislead." *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 465 (7th Cir. 2000); *accord Australian Gold v. Hatfield,* 436 F.3d 1228, 1239 (10th Cir. 2006) (finding use of trademarks in metatags to support claims for trademark infringement); *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, (9th Cir. 1999) (analogizing use of a competitor's trademark in metatags to a misleading billboard). This Court should infer from the "pertinent facts and circumstances" that the Registrant intends "to divert consumers from" official Atlas Copco websites.

Second, with regard to factor VII cited above, the contact information provided by the Registrant when applying for the registration of Defendant Domain Names is false and inaccurate. (Verified Complaint ¶ 24). For example, the telephone numbers for ATLASCOPCOIRAN.COM and ATLASCASPIAN.COM are merely repeating patterns of the same numbers, 98.465-465 and 98.654-654-65, respectively. *Id.* These telephone numbers are invalid. *Id.* Also, the same street, building number, city, and postal code are used for both ATLASCASPIAN.ORG and ATLASCASPIAN.BIZ; however, the address for ATLASCASPIAN.ORG is in Iran, while the address for ATLASCASPIAN.BIZ is in Afghanistan. *Id.* These acts of deception and other deficiencies in the contact information provided by the Registrant when registering the Defendant Domain Names have made it impossible for Plaintiffs to determine the Registrant's true identity. *Id.* In comparing the information provided in the WHOIS database, the reoccurrence of various email addresses, physical addresses, names, registration dates, and DNS servers strongly suggest that the same person is responsible for registering more than 20 domain names incorporating the ATLAS COPCO trademark and confusingly similar variations thereof. (Verified Complaint ¶ 25). The

9

common ownership of these domain names is also established by the fact that these domain names all resolve to the same copy-cat website. *Id.*

Third, the Registrant has also registered many other variations of the ATLAS COPCO trademark, including the following domain names (none of which is authorized in any way).

| | | |
|---|---|---|
| atlascopco.us.com | atlascaspian.name | atlascaspian.in |
| atlascaspian.info | atlascaspian.bz | atlascaspian.ws |
| atlascaspian.ca | atlascaspian.nl | atlascaspian.eu |
| atlascaspian.cn | | |

(Verified Complaint ¶ 25). The above-listed domain names are being used in conjunction with the Defendant Domain Names to divert consumers away from official Atlas Copco online locations. *Id.* Such conduct evidences bad faith pursuant to 15 U.S.C. § 1125(d)(1)(B)(i)(VIII).

Fourth, The Defendant Domain Names are part of a "phishing" scam, involving a fraudulent version of Atlas Copco Connect, intended to acquire sensitive and confidential information from Atlas Copco and customers of Atlas Copco and/or to deceive customers to purchase products or services from the Registrant (and/or other perpetrators of the scam) instead of genuine products from Atlas Copco. (Verified Complaint ¶ 26). Such fraudulent use of the Defendant Domain Names clearly evinces the Registrant's intent to divert consumers from Atlas Copco's online location to a site accessible under the Defendant Domain Names that could harm the goodwill represented by the ATLAS COPCO trademark in violation of 15 U.S.C. § 1125(d)(1)(B)(i)(V).

Specifically, the Defendant Domain Names are being used to operate a copy-cat version of Atlas Copco Connect, an online product ordering system that Atlas Copco customers access by entering user-IDs and passwords for the purpose of placing and tracking orders for Atlas Copco products. (Verified Complaint ¶ 27). The Defendant Domain Names direct visitors to a

"phishing" website located at http://www.atlascopco.us.com/user/ (the specific phishing "log-in page" is arrived at by clicking on a link on the copy-cat sites, displayed by Defendant Domain Names, that says "Compressors and Generators" and then clicking on a link that says "Log into your Global Business Portal").  *Id.*  The phishing website is designed to look like an official Atlas Copco Connect website and mimicks an earlier version of Atlas Copco Connect that recently was updated.  *Id.*  The phishing website takes advantage of the fact that the scam domain name ATLASCOPCO.US.COM is nearly identical to an official Atlas Copco domain name and website at ATLASCOPCO.US in order to lure visitors into believing that they are in the process of logging into the official Atlas Copco Connect site.  *Id.*  Thereby the phishing site fraudulently obtains the official Atlas Copco Connect log-in IDs and passwords of such visitors.  *Id.*  The Atlas Copco Connect log-in IDs and passwords may then be used by the perpetrators of this scam to fraudulently log into the official Atlas Copco Connect, and thereby access sensitive or confidential information of Atlas Copco and/or Atlas Copco's customers, and/or engage in other harmful conduct.  *Id.*

The phishing website prominently displays the ATLAS COPCO trademark and the ATLAS COPCO LOGO.  (Verified Complaint, Ex. F).  The use of the Defendant Domain Names in conjunction with a phishing scam evidences bad faith.

        **ii.**      **Plaintiffs' trademark was distinctive and strong at the time the Defendant Domain Names were registered.**

The ATLAS COPCO trademark is a distinctive and strong mark as those terms have been defined by the Fourth Circuit:

> [C]ourts have categorized marks submitted for registration into four classes in increasing order of strength or distinctiveness:  (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary. . . . Courts have reasoned that a word or figure is descriptive if it "identifies a characteristic or quality of an article or service," and is suggestive if it "'suggests rather than describes,' some characteristic of the

> goods to which it is applied and requires the consumer to exercise his imagination
> to reach a conclusion as to the nature of these goods."

*Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). Further, a federal trademark registration is *prima facie* evidence of "the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration…." 15 U.S.C. § 1115(a).

In this case, Plaintiffs' trademark rights are clearly established both by an incontestable trademark registration, and by many decades of use in commerce. (Verified Complaint ¶ 16). The ATLAS COPCO trademark is neither "descriptive" nor "suggestive" of the characteristics of the compressors and generators, mining and construction equipment, and assembly systems and industrial tools manufactured and sold by Atlas Copco. Instead, it is an "arbitrary" mark that has been associated exclusively with Atlas Copco. The strength of the ATLAS COPCO trademark has been developed and fortified over several decades through substantial investments in advertising and promotion in the U.S. and throughout the world. (Verified Complaint ¶18). The ATLAS COPCO trademark is entitled to maximum protection afforded by trademark law. *Lone Star Steakhouse*, 43 F.3d at 933.

Atlas Copco AB's registration of the ATLAS COPCO trademark should insulate it from having to contend with any confusing registrations of Internet domain names utilizing that mark. *See*, *Cardservice, Int'l, Inc. v. McGee*, 950 F. Supp. 737, 741 (E.D. Va. 1997) ("The fact that Cardservice International has been awarded a trademark means that it should not be forced to compete with others who would also use the words 'cardservice' in connection with Internet domain names.")

The Defendant Domain Names were all registered within the past 18 months.  As such, Plaintiffs' use of the ATLAS COPCO trademark predates the registration of the Defendant Domain Names by nearly 50 years.

> iii.    **The Defendant Domain Names are confusingly similar to Plaintiffs' trademark and will succeed in their intended objective of causing confusion if not transferred to Plaintiffs.**

It is well established that an intent to confuse gives rise to a presumption of confusion. As stated by the Fourth Circuit: "we presume that the person who sets out to infringe on another's trademark has more brains than scruples and will likely succeed."  *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 38 U.S.P.Q.2d 1449, 1456 (4th Cir. 1996).  As noted above, an intent to deceive and divert Internet users seeking Atlas Copco and/or Atlas Copco products or services is the only logical explanation for the acquisition of the Defendant Domain Names and the pairing of those domain names with copy-cat websites mimicking official Atlas Copco websites.  In the face of a clear intent to cause confusion, this Court should presume that the scam "will likely succeed" in causing confusion.

Indeed, even without a presumption of confusion, there is ample evidence that the Defendant Domain Names are confusingly similar to the ATLAS COPCO trademark.  In the Fourth Circuit, the similarity of two marks is determined by examining the "dominant or salient portions of the marks."  *Lone Star Steakhouse*, 43 F.3d at 936.  Where the "dominant" portion of the marks is "sufficiently similar in appearance," a finding of a likelihood of confusion is appropriate despite the fact that collateral portions of the mark may differ.  *Id*.  (affirming entry of an injunction against use of the name "Lone Star Grill" as an infringement of the plaintiff's mark "Lone Star Steakhouse & Saloon").

In this case, the dominant portion of each of the Defendant Domain Names is "ATLAS COPCO" or "ATLAS."  These "dominant" terms are paired with the generic terms "CASPIAN" and "IRAN," which are generic geographic terms that do not distinguish the Defendant Domain Names from the ATLAS COPCO trademark.  Indeed, in the context of Internet domain names, one court specifically noted "[w]e do not believe the Defendant's addition of a generic or geographic term…is sufficient to distinguish the domain name from Plaintiff's protected mark. An internet user might reasonably assume that [the geographic term "CT"] was added to the Plaintiff's mark by the Plaintiff to identify its geographic location."  *Prime Publishers, Inc. v. Am.-Republican, Inc.*, 160 F. Supp.2d 266, 280 (D. Conn. 2001).  This conclusion is especially appropriate in this case because Atlas Copco has a practice of pairing the ATLAS COPCO trademark with geographic designations corresponding to a particular market. (Verified Complaint ¶ 19).

The dominant portions of the Defendant Domain Names are confusingly similar to the ATLAS COPCO trademark.  With regard to the Defendant Domain Names that wholly incorporate the ATLAS COPCO trademark, this point is clear.  With regard to those of the Defendant Domain Names that incorporate "ATLAS," the leading treatise on trademark law explains:

> Americans are prone to abbreviate recognized trademarks and to use nicknames.  Such abbreviations and nicknames are just as entitled to legal protection as the original full trademark.  If the public has come to shorten a trademark into a nickname, then the nickname is entitled to independent legal protection as a mark.  Examples of nicknames held protectable as trademarks include: COKE for Coca-Cola, BUD for BUDWEISER beer, BEETLE for a style of Volkswagen automobile, HOG for large Harley-Davidson motorcycles, MET for METROPOLITAN OPERA, PAN-AM, for Pan American Airways, and PHILLIES for PHILADELPHIA cigars.

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 7:18 (4th ed. 2004).

Atlas Copco customers frequently shorten the ATLAS COPCO trademark, and refer to Plaintiffs as simply "Atlas." (Verified Complaint ¶ 13). Accordingly, "Atlas" is confusingly similar to the ATLAS COPCO trademark. Indeed, this conclusion is strongly supported by the fact that the Defendant Domain Names consisting of terms "Atlas" and "Caspian" or "Iran" display are linked to copy-cat websites (including the scam site ATLASCOPCO.US.COM) that mimic official Atlas Copco websites and the copy-cat websites display an infringing "Atlas Caspian" logo that is confusingly similar to the ATLAS COPCO trademark (or display the actual ATLAS COPCO trademark). (Verified Complaint ¶ 21).

Even if web surfers eventually discover that the Defendant Domain Names are not affiliated with Atlas Copco, the "initial confusion" associated with the misdirection of traffic to the Defendant Domain Names is confusion that is cognizable under the Lanham Act. *See Green Products*, 992 F. Supp. at 1076. A similar argument was advanced by defendant ICBP in the Green Products case. ICBP had registered the domain name "GREENPRODUCTS.COM," and argued any initial confusion by a web surfer would eventually be cured. The Green Products court's response is equally applicable here:

> The Court finds ICBP's argument clever, but ultimately unpersuasive. ICBP's argument is analogous to saying that ICBP has the right to hang a sign in front of its store that reads, "Green Products." When customers enter the store expecting to be able to see (and possibly, to buy) products made by Green Products, ICBP then announces, "Actually, this store isn't owned by Green Products; it's owned by ICBP. . . ." In essence, ICBP is capitalizing on the strong similarity between Green Products' trademark and ICBP's domain name to lure customers onto its web page.

*Id*. at 1076.

## CONCLUSION

For the foregoing reasons, the Court should enter an order requiring the Registries for the Defendant Domain Names to change immediately the registrars for the Defendant Domain

Names to Network Solutions LLC so the Defendant Domain Names can be registered by Atlas

Copco AB.

                          **ATLAS COPCO AB and**
                          **ATLAS COPCO NORTH AMERICA LLC**


                   By:     ___/s/ Laura N. Begun_____
                          Laura N. Begun
                          laura.begun@troutmansanders.com
                          Virginia Bar No. 72074
                          TROUTMAN SANDERS LLP
                          1660 International Drive, Suite 600
                          McLean, Virginia  22102
                          Telephone:     (703) 734-4334
                          Facsimile:     (703) 734-4340

OF COUNSEL:

Gregory D. Phillips
Utah Bar Number 4645
Jared L. Cherry
Utah Bar Number 11534
HOWARD, PHILLIPS & ANDERSEN
560 East 200 South, Suite 300
Salt Lake City, UT 84102
Telephone:     (801) 366-7471
Facsimile:     (801) 366-7706

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of December 2007, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system and that a true and correct copy of the foregoing was sent to the following non-filing users by first class mail and electronic mail:

| | |
|---|---|
| **ATLASCOPCOIRAN.COM**<br><br>Reza Ranjkar<br>AtlasCaspian<br>AtlasCaspian<br>AtlasCaspian, AtlasCaspian 14735469<br>Iran<br><br>atlascaspian@gmail.com | **ATLASCASPIAN.COM**<br><br>ParsaGostar<br>AtlasCaspian<br>No. 4 , Delhi<br>Delhi, Delhi 1478526396<br>India<br><br>atlaswide@gmail.com |
| **ATLASCASPIAN.NET**<br><br>Qazvin Net<br>AtlasCaspian<br>Atlascaspian Building<br>Delhi, Delhi 34185<br>India<br><br>atlaswide@gmail.com | **ATLASCASPIAN.ORG**<br><br>Qazvin Net<br>CaspianITC<br>End Of Padegan St. Hamyari Bldg. No 10<br>Qazvin, Qa 34185<br>Iran<br><br>info@qazvin.net |
| **ATLASCASPIAN.BIZ**<br><br>Alireza Khodabakhsh<br>CaspianITC<br>End of Padegan St. Hamyari Building. No 10<br>Qazvin, QA 34185<br>Afghanistan<br><br>ranjkar@gmail.com | **ATLASCASPIANIR.COM**<br><br>Atlas Caspian<br>Teh, On 12344<br>Iran<br><br><br><br>lilouser@yahoo.com |
| **ATLASCASPIANIRAN.COM**<br><br>Atlas Caspian<br>Teh, On 12344<br>Iran<br><br><br>lilouser@yahoo.com | **ATLASCASPIAN.US**<br><br>Alireza Khodabakhsh<br>CaspianITC<br>End Of Padegan St. Hamyari Bld. No 10<br>Qazvin, QA 34185<br>Afghanistan<br><br>info@qazvin.net |

| **ATLASCASPIAN.CC** | **ATLASCASPIAN.TV** |
|---|---|
| Mohammad Reza Ranjkar<br>Ranjkar Co<br>Tehran<br>Tehran, Tehran 34185<br><br>ranjkar@gmail.com | Mohammad Reza Ranjkar<br>Ranjkar Co.<br>Tehran<br>Tehran, Tehran 34185<br><br>ranjkar@gmail.com |
| **ATLAS-CASPIAN.COM**<br><br>AtlasCaspian<br>AtlasCaspian<br>Uniguard Park McKinley Building Bellevue<br>Washington, WA 98007<br><br>AtlasCaspian@gmail.com | |

By:     /s/ Laura N. Begun_____
Laura N. Begun
laura.begun@troutmansanders.com
Virginia Bar No. 72074
TROUTMAN SANDERS LLP
1660 International Drive, Suite 600
McLean, Virginia  22102
Telephone:     (703) 734-4334
Facsimile:     (703) 734-4340

*Attorneys for Plaintiffs*